THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:12-CV-00344-FL

CLARINDA COX and LIONEL )
SHAWN COX, as parents and next )
friends of J.C., a minor )
)
      Plaintiffs, )
)
v. ) **MEMORANDUM &**
) **RECOMMENDATION**
SAMPSON COUNTY BOARD OF )
EDUCATION and TERESA HOLMES, )
)
      Defendants. )
_____ )

This matter is before the Court upon the defendants' Motions to Dismiss. (DEs 14, 15). The Motions have been fully briefed and are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that the Sampson County Board of Education ("SCBOE")'s Motion to Dismiss (DE 14) be denied and that Holmes' Motion to Dismiss (DE 15) be granted in part and denied in part.

**I. BACKGROUND**

For purposes of a motion to dismiss, the factual averments of the complaint will be accepted as true. The complaint alleges that, at all relevant times, J.C. was a 10 year old, 5th grade student at Union Elementary School, which was within the supervision and

control of the SCBOE. (DE 1, ¶¶ 8, 9). Defendant Holmes was assistant principal at Union Elementary. (*Id*. ¶ 7).

On June 1, 2012, J.C. was at a table in the cafeteria with his classmates when another student dropped coins on the floor. (*Id*. ¶¶ 10, 11). J.C. went under the table to retrieve the coins and returned them to the student. (*Id*. ¶ 12). Holmes, who was in the cafeteria, noticed the commotion at the table and went over to it. (*Id*. ¶ 13). Holmes was told that the same student had dropped $20.00 and that the money was missing. (*Id*. ¶ 14). She was also told that J.C. had gone under the table to retrieve the money. (*Id*.).

Holmes asked J.C. if he had the money, which he denied. (*Id*. ¶¶ 15, 16). Holmes then took J.C. to her office, and asked a custodian to meet her there. (*Id*. ¶ 17). With the custodian present, Holmes shut the door and asked J.C. again if he had the money, which he denied, pulling out his pockets to show her. (*Id*. ¶ 18). Holmes then told J.C. she was going to search him, instructing J.C. to remove his shoes, socks, pants and shirt. (*Id*. ¶¶ 18, 19). J.C. was then wearing only his undershirt and undershorts. (*Id*. ¶ 19). Holmes ran her fingers around the inside of his waistband of the undershorts and lifted his undershirt. (*Id*.).

Holmes did not find the $20.00 or any other money on J.C., and she told him that she had the authority to search him because teachers and other students thought he had the money. (*Id*. ¶¶ 20, 21). Another teacher arrived in Holmes' office and stated that the $20.00 had been found on the cafeteria floor. (*Id*. ¶ 22). J.C. thereafter returned to class and finished the school day. (*Id*. ¶ 23).

2

The following Monday, June 4, 2012, Plaintiff Clarinda Cox went to Sampson County School offices to speak about the search of J.C. (*Id.* ¶ 27). She spoke with Suan Warren, the Public Relations/Student Services Coordinator for SCBOE, who informed Cox that school personnel have the authority to perform searches and that Holmes was within her rights. (*Id.* ¶ 28). Cox then went to Union Elementary and spoke with the Principal, Dr. Linda Jewel-Carr, who was unaware of the incident. (*Id.* ¶ 29). Upon questioning by Jewel-Carr, Holmes acknowledged searching J.C. and stated that she was within her rights in conducting the search. (*Id.* ¶ 30).

The present action, asserting claims for unreasonable search and seizure under the Fourth Amendment and state law, as well as claims for battery and invasion of privacy, followed.

## II. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(6)

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). The court may dismiss a complaint for failure to state a claim if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley*,

3

355 U.S. at 45–46; *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

While the court must take the facts in the light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts [or] . . . . unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted); *see also Parham v. Pepsico, Inc.*, 927 F. Supp. 177, 178 (E.D.N.C. 1995) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss pursuant to 12(b)(6)"). In this way, a motion to dismiss "allows a court to eliminate actions that are fatally flawed in their legal premises." *Parham*, 927 F. Supp. at 178.

The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, however inartfully pled, is held to less stringent standards than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). *Erickson*, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions'" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–52 (2009); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Even in civil rights cases, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," nor "allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v.*

4

*Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that, in ruling on a Rule 12(b)(6) motion to dismiss, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (court may consider documents subject to judicial notice without converting motion to dismiss into one of summary judgment).

Additionally, a court may take judicial notice at any stage in the proceeding. Fed. R. Evid. 201(d). "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)); *see also United States v. Stanley*, 449 F. App'x 249, 251 n.2 (4th Cir. 2011) (taking notice of North Carolina judgments of conviction).

**B. Section 1983**

Title 42 U.S.C. § 1983 provides a federal statutory remedy for deprivations of rights secured by the United States Constitution and federal statutes. According to that statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

5

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). To allege an action under § 1983, a party must prove that the charged state actor "(1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

**III. DISCUSSION**

**A. Fourth Amendment claim**

A municipality can be liable under § 1983 if a plaintiff shows that he was deprived of a constitutional right because of an official policy or because of a practice or custom that is so pervasive that it is the functional equivalent of an official policy. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In addition, a municipality can also be liable for failure to train their employees, if the failure amounts to deliberate indifference to rights of the people whom the employee comes in contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Local governing bodies, including school boards and officials sued in their official capacities, are "persons" that can be sued directly under Section 1983 for

6

monetary, declaratory, or injunctive relief when the alleged unconstitutional action executes governmental policy or custom. *Monell, supra*.

In order to state a § 1983 claim against a municipality, or a subdivision thereof, a plaintiff must plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994). The "official policy" requirement is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (emphasis in original). Municipal liability for a policy or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

A municipality or local government is responsible only when execution of its policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts injury. *See Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). There is no respondeat superior liability under § 1983; thus the school board as an entity cannot be held liable for decisions

7

committed to the discretion of individual actors. *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

### 1. Failure to train

SCOBE asserts that the allegations of the complaint are conclusory. Specifically, it asserts that the Plaintiffs have failed to cite the policy or point to a custom of the Board ignoring similar conduct. Plaintiff contend that SCBOE failure to properly train its agents such as Holmes resulted in the alleged violation of J.C.'s rights.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson*, — U.S. —, 131 S.Ct. 1350, 1359 (2011). As noted above, a § 1983 claim based on a theory of inadequate training is actionable only "where the municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference'" to a citizen's constitutional rights. *Canton*, 489 U.S. at 388. Only in such circumstances "can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Canton*, 489 U.S. at 389. When a municipality knows that its program will cause constitutional violations but does not act, it "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395.

The Defendants point to a policy in place regarding searches of students. Policy 4342 provides:

> A student's person . . . may be searched whenever a school authority has reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating a law or a school.
>
> If a frisk or "pat down" search of a student's person is conducted, it must be conducted in private by a school official of the same gender and with an adult witness of the same gender present, when feasible.
>
> If the school official has reasonable grounds for suspecting that the student has . . . an item imminently dangerous to the student or to others, a more intrusive search of the student's person may be conducted. Such a search may be conducted only in private by a school official of the same gender, with an adult witness of the same gender present, and only upon the prior approval of the superintendent or designee, unless the health or safety of students will be endangered by the delay that might be caused by following these procedures.[1]

Plaintiffs contend the complaint states a claim under §1983 because Policy 4342 was not followed when (1) Holmes, a female, conducted a search of J.C., a male; (2) Holmes failed to get the approval of the Superintendent or designee prior to conducting the search of J.C.; and (3) the subject of the search, a $20.00 bill, is not an item of imminent danger to J.C. or other students so as to justify the more intrusive search of his person. Defendants contend that the policy clearly establishes that Holmes lacked the authority to conduct the search and, given that there is no respondeat superior liability under §1983, Plaintiffs have failed to state a claim against the SCBOE.

---

[1] The School Policy is a matter of public record and therefore may be considered in conjunction with a Rule 12(b)(6) motion without converting it to one for summary judgment. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). *See also* http://policy.microscribepub.com/cgi-bin/om_isapi.dll?clientID=511817106&depth=8&infobase=sampson.nfo&record={105E}&softpage=PL_frame.

9

However, the existence of such a policy, alone, cannot relieve a municipality of liability if there is doubt that officials adhered to the policy. If there were other instances of students being searched outside of the scope of Policy 4342, and the Board was aware of such actions, a deliberate indifference to constitutional rights sufficient to establish a custom or policy for purposes of § 1983 liability could be found. Indeed, the allegation that both Warren and Holmes, on two occasions, said Holmes was within her rights and/or had the authority to conduct search suggests that Board agents or officials are not properly informed or instructed on the Board policy for student searches. Such an allegation lends support to Plaintiffs' position that the SCBOE failed to properly train its employees. *See Connick, supra* at 1359 ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."). This, the complaint adequately pleads a §1983 claim under *Monell*.

### 2. *Official capacity claim against Holmes*

Defendants maintain, and Plaintiffs concede, that the Fourth Amendment claim asserted against Holmes in her official capacity is duplicative of the claim against the Board and that it is subject to dismissal. *See Love-Lane*, 355 F.3d at 783 (affirming dismissal of a claim against a defendant in his official capacity where the government entity had also been sued); *Shaeffer v. County of Chatham*, 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) (dismissing claims against a defendant in her official capacity as duplicative of the plaintiff's claims against the municipality).

*3. Reasonableness of search*

In most instances, the Fourth Amendment forbids searches and seizures of citizens absent a warrant supported by probable cause. *Katz v. United States*, 389 U.S. 347, 356–57, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed," and that evidence bearing on that offense will be found in the place to be searched. *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). These strictures apply not only to law enforcement officers, but to all "activities of sovereign authority." *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

Searches and seizures of students conducted by school officials are subject to a lesser degree of procedural scrutiny than searches and seizures of other citizens. *Wofford v. Evans,* 390 F.3d 318, 326 (2004). Courts have applied a standard of reasonable suspicion to determine the legality of a school administrator's search of a student and have held that a school search "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction[.]" *New Jersey v. T.L.O.*, 469 U.S. 325, 342, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

In *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 129 S.Ct. 2633 (2009), the Supreme Court addressed the search of a 13-year-old student by school officials acting on a reasonable suspicion that she had brought prescription and over-the-counter medication to school. The Supreme Court determined that the search of the student's bra and underpants was unconstitutional because there were no reasons to suspect the drugs presented a danger or were concealed in her underclothes.

In the present case, the Defendants, arguing the search was reasonable, attempt to distinguish *Redding*, asserting that the complaint does not allege that any of J.C.'s private areas were exposed during the search by Holmes. This is unpersuasive. *Redding* may, in fact, be distinguishable inasmuch as it involved a search for medication, arguably more of a threat to the safety of students than the present matter which concerns only a search for money, which poses no danger. The central inquiry is whether the search was permissible and not excessively intrusive in light not only of J.C.'s age and sex but also the nature of the infraction. It is plausible that a search of the underclothes of a student, conducted by an adult of the opposite sex, looking for money, which poses absolutely no danger to the student or others, is excessively intrusive and not permissible under the Fourth Amendment. Such allegations suggest that "the content of the suspicion failed to match the degree of intrusion."*Redding, supra* at 375. Thus, it is arguable that the search was unreasonable and, therefore, unconstitutional. For purposes of a motion to dismiss, Plaintiffs have stated a Fourth Amendment claim.

Accordingly, it is recommended that the motion to dismiss be granted on Count I as to any claim asserted against Holmes in her official capacity and that the motion be denied in all other respects.

### B. State Constitutional claims under Article 1 § 20

On the same grounds they challenge Count I, Defendants seek dismissal of Count II, a claim for unreasonable search and seizure brought pursuant to Article 1 § 20 of the North Carlina State Constitution. For the same reasons set forth above regarding Count I, Count II should survive the motion to dismiss. Accordingly, it is recommended that the motions to dismiss be denied with respect to Count II.

With respect to Holmes, the complaint brings this cause of action against her in both her official and individual capacities. (*See* DE 1, ¶ 7). Inasmuch as the North Carolina Supreme Court has concluded that the North Carolina State Constitution does not support a claim for money damages against an individual acting in their personal capacity, *see Love–Lane*, 355 F.3d at 789 (citing *DeWitt v. Mecklenburg County*, 73 F. Supp. 2d 589, 605–06 (W.D.N.C. 1999)), the motion to dismiss should be granted to the extent it brings a claim against Holmes in her individual capacity and denied to the extent Count II brings a claim against Holmes in her official capacity.

### C. Battery and Invasion of Privacy

Defendants also seek dismissal of Counts III (battery) and IV (invasion of privacy) asserting that claims for such torts are unsupported where there is a permissible search by an official. However, whether the search of J.C. was permissible in light of the

13

circumstances is the very matter at issue. As such, it cannot be said that "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Accordingly, the motions to dismiss should be denied as to Counts III and IV.

## V. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that SCBOE's Motion to Dismiss (DE 14) be denied and that Holmes' Motion to Dismiss (DE 15) be granted to the extent it seeks dismissal of Count I against Holmes in her official capacity; be granted to the extent is seeks dismissal of Count II against Holmes in her individual capacity; and denied in all other respects.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on September 9, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE